**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| FUNDIENT, LLC, SCOTT GORDON, and SAL MIRRAN,<br><br>*Plaintiffs*,<br><br>vs.<br><br>JOHNSON CONTROLS, INC.,<br><br>*Defendant*. | Case No. 1:22-cv-00284-RP |

**PLAINTIFFS' OPPOSED MOTION FOR JURISDICTIONAL DISCOVERY**

Plaintiffs Fundient, LLC, Scott Gordon, and Sal Mirran move this Court to grant them jurisdictional discovery related to Defendant Johnson Controls, Inc.'s ("JCI") Motion to Dismiss for want of personal jurisdiction. JCI's refusal to engage in jurisdictional discovery voluntarily is yet another attempt by JCI to withhold relevant information from Plaintiffs (and now from the Court). Granting Plaintiffs' request for jurisdictional discovery will confirm what Plaintiffs already know to be true—JCI knowingly directed an intentional tort toward Texas by making material misrepresentations and omissions to induce Plaintiffs, Texas residents, to invest $3 million in Fundient Capital and Fundient Flow. Jurisdictional discovery will confirm that jurisdiction in Texas is proper.

**I**
**FACTS**

Plaintiffs filed this lawsuit in Texas state court on August 10, 2021, accusing JCI of common law fraud and violations of the Texas Securities Act. *See* Ex. 1 (Original Petition). JCI used material misrepresentations and omissions in a September 22, 2020 presentation and whitepaper to induce Plaintiffs to purchase a $2 million membership interest in Fundient Capital and to contribute an additional $1 million to Fundient Flow. JCI advertised in the presentation and

whitepaper that Plaintiffs were investing in an All-in-One ("AIO") leasing program for HVAC units that had already been piloted by George Brazil Air Conditioning and Heating with promising results. It also represented that George Brazil would remain a participant in the AIO Leasing Program. In fact, George Brazil never piloted an AIO Leasing Program and never intended to participate in Fundient Capital's AIO Leasing Program, which it considered "uneconomical." True to George Brazil's prediction, the AIO Leasing Program ended up an economic disaster. The results of Fundient Capital's first year of operations amounted to approximately 1% of JCI's first-year sales projections.

In response to Plaintiffs' complaint, JCI filed a special appearance on December 8, 2021, but did not disclose the basis for its belief that Texas lacks personal jurisdiction beyond the conclusory statement "Plaintiffs identify no actions taken by Defendant in Texas related to Plaintiffs' common law fraud or Texas Securities Act claims." *See* Ex. 2 (Special Appearance) ¶ 3. JCI then removed the case on March 25, 2022, after Plaintiffs settled with Fundient Capital and other associated defendants. *See* Ex. 3 (Notice of Removal). Then, on April 5, 2022, JCI filed its Motion to Dismiss, disclosing for the first time its belief that Texas lacks personal jurisdiction over this matter because Plaintiffs fail to show (1) JCI sent the whitepaper to Plaintiffs, (2) JCI played a role in the material misrepresentations and omissions in the presentation, and (3) JCI knew Plaintiffs were based in Texas. *See* Ex. 4 (Motion to Dismiss). Upon learning these three fact questions were the bases of JCI's contest to personal jurisdiction, Plaintiffs sent JCI jurisdictional discovery requests on April 8, 2022. *See* Ex. 5 (April 8 Correspondence). On April 13, 2022, JCI declined to respond to Plaintiffs' discovery requests voluntarily, claiming that Plaintiffs "fail[] to make the 'preliminary showing of jurisdiction' necessary to permit jurisdictional discovery." *See* Ex. 6 (April 13 Correspondence).

## II
## STANDARD

"As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Broadway Nat'l Bank v. Plano Encryption Techs., LLC*, 173 F. Supp. 3d 469, 480 (W.D. Tex. 2016) (Sparks, J.). "A plaintiff seeking jurisdictional discovery is expected to identify with particularity the discovery sought, explain what information it expects to obtain, and explain how that information would support the assertion of personal jurisdiction . . . ." *Id.* "A district court is not required to defer ruling on a jurisdictional motion until all discovery contemplated by the plaintiff has been accomplished," but "an *opportunity* for discovery is required." *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (emphasis omitted).

## III
## ARGUMENT

### A. Plaintiffs have made a preliminary showing of jurisdiction.

JCI is wrong to assert that Plaintiffs' First Amended Petition "fails to make the 'preliminary showing of jurisdiction' necessary to permit jurisdictional discovery." In *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005), the Fifth Circuit affirmed the district court's denial of plaintiffs' request for jurisdictional discovery in part because they had "not made even a preliminary showing of jurisdiction." The court was careful to note that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)) (alterations omitted).

Plaintiffs' First Amended Petition includes several factual allegations establishing the sufficiency of JCI's contacts with Texas to subject it to this Court's jurisdiction. First, the Petition accuses JCI of making material misrepresentations and omissions in the September 22, 2020 presentation, including that "AIO was first piloted in the summer of 2018 by George Brazil Air Conditioning and Heating in the greater Phoenix, AZ market" and that the AIO Leasing Program was conceived "[a]s an opportunity to drive growth for . . . George Brazil," when in fact George Brazil did not pilot the AIO Leasing Program and did not intend to participate in it. *See* Ex. 7 (First Amended Petition) ¶¶ 10–16, 21–23. Second, the Petition accuses JCI of making material misrepresentations and omissions in the whitepaper, including that the AIO Leasing Program had been the subject of a "successful collaboration between York® and George Brazil" that "operate[d] like a lease," when in fact the collaboration between York (JCI's HVAC subsidiary) and George Brazil involved purchase-money loans. *See id.* ¶¶ 17–19. Third, the Petition accuses JCI of delivering the presentation and allowing Fundient Capital's Scott Zimmer to deliver the whitepaper to Plaintiffs, knowing the presentation and whitepaper contained material misrepresentations and omissions and knowing the Plaintiffs resided in Texas. *See id.* ¶ 10.

Taken together, these factual allegations make a preliminary showing (at least) that JCI is subject to this Court's jurisdiction. "Specific jurisdiction is appropriate only where the defendant 'purposefully availed itself of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws, though it may arise incident to the commission of a single act directed at the forum." *Fed. Trade Comm'n v. Educare Centre Servs.*, 414 F. Supp. 3d 960, 968 (W.D. Tex. 2019). The longstanding rule in the Fifth Circuit is that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Ala., Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

In *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332 (5th Cir. 1982), the Fifth Circuit found personal jurisdiction in Mississippi "predicated on one long-distance telephone call that was alleged to constitute a tort committed 'in whole or in part' in Mississippi." In *Wien Air*, the Fifth Circuit found personal jurisdiction in Texas based on "tortious actions outside Texas directed towards Wien Air in Texas," including "letters, faxes, and phone calls to Texas by Brandt whose contents contained fraudulent misrepresentations and promises and whose contents failed to disclose material information." 195 F.3d at 212. In *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001), the Fifth Circuit found personal jurisdiction over plaintiff's Texas Securities Act ("TSA") and related common law claims where plaintiff alleged defendant "participated in a telephone conversation . . . that was designed to convince [plaintiff] to make the $650,000 loan," "failed to correct allegedly false statements made by [co-defendant] during that phone call," and "prepared and sent loan documents and stock certificates to him in Texas that contained fraudulent misstatements."

Plaintiffs have likewise made a preliminary showing of personal jurisdiction here, based on JCI's material misrepresentations and omissions in the presentation and whitepaper to induce Plaintiffs to invest $3 million in Fundient Capital and Fundient Flow. Those fraudulent communications gave rise to Plaintiffs' TSA and common-law-fraud causes of action, so JCI purposefully availed the laws of Texas by directing those communications to Plaintiffs residing there. *Cf., e.g.*, *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 441 (W.D. Tex. 2007) (Rodriguez, J.) ("Therefore, if the Suttons have stated a case for fraud, where the claim arose out of the content of communications made by Advanced Aquaculture to the Suttons, then this constitutes purposeful availment of the laws of Texas and sufficient minimum contacts to extend

personal jurisdiction."). Having made the requisite preliminary showing of personal jurisdiction, Plaintiffs are entitled to jurisdictional discovery. *See Fielding*, 415 F.3d at 429.

**B. Plaintiffs' jurisdictional discovery requests are narrowly tailored.**

The Court should grant Plaintiffs' jurisdictional discovery requests, which are narrowly tailored to resolve the jurisdictional fact issues raised by JCI's Motion to Dismiss. *See Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 679–80 (W.D. Tex. 2015) (Lane, M.J.) (granting jurisdictional discovery because "the discovery requested [was] narrowly tailored" to "resolve the jurisdictional fact issues identified").

Plaintiffs' jurisdictional discovery requests 1–2 are narrowly tailored to determine JCI's role in sending the whitepaper to Plaintiffs. *See* Ex. 8 (Discovery Requests) at 5.

| | |
|---|---|
| <u>RFP 1</u> | All documents and communications related to the decision to send the Whitepaper to Plaintiffs. |
| <u>RFP 2</u> | All documents and communications showing how Scott Zimmer obtained the Whitepaper, when he obtained it, and why it was sent to him. |

JCI's Motion to Dismiss concedes that JCI prepared the whitepaper. *See* Ex. 4 (Motion to Dismiss) at 4. It argues, however, that the whitepaper does not establish personal jurisdiction in Texas because JCI did not send the whitepaper to Plaintiffs in Texas. *See id.* Zimmer did. *See id.* This argument falls short of bringing JCI out from under this Court's jurisdiction. Texas Courts regularly exercise jurisdiction over defendants who did not deliver fraudulent communications themselves but instead directed the delivery of fraudulent communications by a third party. *See Educare*, 414 F. Supp. 3d at 970 ("Indeed, the Fifth Circuit has repeatedly held that intentionally directing misrepresentations over the phone to recipients in the forum gives rise to sufficient minimum contacts for specific personal jurisdiction."). For example, the Western District of Texas held in *Educare* that it had personal jurisdiction over a member of a deceptive telemarketing scheme even though there was no proof he had initiated any of the deceptive phone calls. *Id.* at

969–72. The court explained that "whether or not [defendant] initiated any single phone call, he is alleged at minimum to have directed many deceptive phone calls be made to U.S. consumers, such that he is akin to an initiator of the calls and it is his intentional conduct that led to this litigation." *Id.* at 971. "These alleged contacts are sufficient for purposeful availment." *Id.* Plaintiffs' jurisdictional discovery requests 1–2 will determine whether the same can be said regarding JCI's role in sending the whitepaper. Plaintiffs anticipate that JCI's responses to these discovery requests (if compelled) will confirm that JCI sent the fraudulent whitepaper to Zimmer with the intent that he deliver it to Plaintiffs, thus confirming this Court's jurisdiction over this lawsuit.

Plaintiff's jurisdictional discovery requests 3–5 are narrowly tailored to determine JCI's role in preparing the presentation, *see* Ex. 8 (Discovery Requests) at 6, which JCI's Motion to Dismiss concedes is "critical[] for purposes of personal jurisdiction," *see* Ex. 4 (Motion to Dismiss) at 4.

| | |
|---|---|
| RFP 3 | All documents and communications showing who worked on the Presentation, which portions of the Presentation they added and/or edited, when they worked on the Presentation, and for how long, including any revision histories. |
| RFP 4 | All documents and communications related to Joe Oliveri's, Nina LoCicero's, and any other JCI employee's preparation to deliver the Presentation to Plaintiffs. |
| RFP 5 | Documents sufficient to show how many hours JCI employees spent preparing the Presentation and preparing to deliver it to Plaintiffs. |

JCI's Motion to Dismiss argues that the presentation does not establish personal jurisdiction even though it was delivered to Plaintiffs in Texas because Fundient fails to allege "what role JCI's representatives allegedly played in 'delivering' the presentation." *Id.* at 4–5. In *Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 490–91 (5th Cir. 2018), the Fifth Circuit found personal jurisdiction in Texas over a defendant who did not initiate the conversation at issue but "participated in a conference call" and "alleged misrepresented certain things over the phone."

Plaintiffs believe JCI's responses to Plaintiffs' jurisdictional discovery requests 3–5 will confirm JCI not only participated but was closely involved in preparing and delivering the fraudulent presentation.

Plaintiff's jurisdictional discovery request 6 is narrowly tailored to determine whether JCI knew Plaintiffs resided in Texas. *See* Ex. 8 (Discovery Requests) at 6.

| | |
|---|---|
| RFP 6 | All documents and communications showing or supporting the inference that JCI knew Plaintiffs are Texas residents. |

JCI's Motion to Dismiss argues this Court lacks jurisdiction because "Plaintiffs fail to plead facts supporting the inference that, at any relevant time, JCI knew Plaintiffs were based in Texas." *See* Ex. 4 (Motion to Dismiss) at 6. This is a weak argument considering Plaintiff Sal Mirran's emails to JCI during the relevant time period included a Texas address in the signature line. *See, e.g.*, Ex. 9 (September 22, 2020 Email from Sal Mirran to JCI's Nina Lo Cicero). JCI's response to jurisdictional discovery request 6 will confirm the obvious—JCI knew Plaintiffs resided in Texas when it committed an intentional tort against them.

## IV
## CONCLUSION

The Court should grant Plaintiffs' Motion for Jurisdictional Discovery because Plaintiffs have made a preliminary showing of personal jurisdiction and have narrowly tailored their proposed discovery requests to the fact issues raised by JCI's Motion to Dismiss.

Dated: April 19, 2022

Respectfully submitted,

*/s/ William R.H. Merrill*
William R.H. Merrill (Texas 24006064)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100

Houston, TX 77002-5096
Telephone: (713) 651-9366
Fax: (713) 654-6666
bmerrill@susmangodfrey.com

***Attorney for Plaintiffs Fundient, LLC, Scott Gordon and Sal Mirran***

**CERTIFICATE OF SERVICE**

I certify that on April 19, 2022, a copy of the foregoing was served on the parties to this action by electronically filing true and correct copies with the Clerk of the Court using the ECM/ECF system which automatically sent notification by e-mail of such filing to the counsel of record.

*/s/ William R.H. Merrill*
William R.H. Merrill