**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| FUNDIENT, LLC, SCOTT GORDON, and SAL MIRRAN<br><br>*Plaintiffs*,<br><br>v.<br><br>JOHNSON CONTROLS, INC.,<br><br>*Defendant*. | ) | Civil Action No. 1:22-cv-00284-RP |

**<u>OPPOSITION TO PLAINTIFFS' MOTION FOR JURISDICTIONAL DISCOVERY</u>**

Defendant Johnson Controls, Inc. ("JCI"), by and through the undersigned counsel, hereby submits the following Opposition to Plaintiffs' Motion for Jurisdictional Discovery.

## <u>INTRODUCTION</u>

In September 2020, JJS Leasing, LLC ("JJS Leasing")—not JCI—reached out to Fundient, LLC ("Fundient") seeking an investor. Two months later, Fundient purchased a membership interest in JJS Leasing (which changed its name to Fundient Capital) for $2 million dollars, while Fundient's members allegedly contributed an additional $1 million to purchase and securitize lease contracts originated by Fundient Capital. JCI was not a party to these transactions. Nor was JCI privy to what was surely a substantial about of due diligence between the parties. Nonetheless, Fundient now asserts that JCI, a company with which it had minimal contact, defrauded it into investing in Fundient Capital.

On April 5, 2022, JCI filed a Motion to Dismiss Plaintiffs First Amended Petition ("FAP") for lack of jurisdiction and for failure to state a claim. In the FAP, the only contacts Plaintiffs allege between JCI and Texas are (1) that JCI prepared a whitepaper, which Scott Zimmer of JSS

Leasing—not JCI—sent to Fundient, and (2) that representatives of JCI and JSS Leasing "delivered" a presentation to Fundient on September 22, 2020. *See* FAP ¶¶ 10, 17. As explained in JCI's Motion to Dismiss, neither alleged contact supports the exercise of jurisdiction over JCI. Notwithstanding Plaintiffs' speculative allegation that JCI prepared the whitepaper for Fundient, the whitepaper was in fact created at least nine months before the Fundient meeting to present to JCI leadership as part of JCI's internal approval process. *See* Motion to Dismiss Ex. 1 ¶¶ 4-5. Likewise, among the many deficiencies in Plaintiffs allegations concerning the presentation, Plaintiffs merely lump JCI and JSS Leasing representatives together, failing to identify any action or statement by JCI'.

Without addressing these pleading defects, Plaintiffs now seek jurisdictional discovery.

## ARGUMENT

"As the part[ies] opposing dismissal and requesting discovery, [Plaintiffs] bear the burden of demonstrating the necessity of discovery." *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). As explained more fully below, Plaintiffs fail to meet this burden, for three reasons.

*First*, Plaintiffs fail to plead with particularity that JCI committed fraud, which is itself fatal to Plaintiffs assertion that Texas has personal jurisdiction over JCI. *Second*, Plaintiffs fail to make a preliminary showing of jurisdiction, as necessary to support jurisdictional discovery. *Third*, Plaintiffs' past failure to diligently pursue jurisdictional discovery further counsels against permitting jurisdictional discovery now.

### A. Plaintiffs Fail to Plead Fraud with Particularity

Jurisdictional discovery should not be permitted where, as here, jurisdiction hinges on an insufficiently pled fraud claim. As several courts in this Circuit have recognized, "[w]here the

exercise of specific jurisdiction turns entirely on an allegation that Defendant has committed the intentional tort of fraud," it is "incumbent upon Plaintiff to state its fraud claim with particularity." *Moody Nat. Realty v. Ozark Mgt., Inc.*, 2008 WL 8082760, at *6 (S.D. Tex. Apr. 22, 2008); *see Gross v. PowerBlock, Inc.*, 2019 WL 1313452, at *2 (W.D. Tex. Jan. 31, 2019) (same). And when pleading fraud, "the who, what, when, and where must be laid out *before* access to the discovery process is granted." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997); *see Whiddon v. Chase Home Fin., LLC*, 666 F. Supp. 2d 681, 691 (E.D. Tex. 2009) ("Rule 9(b) does not permit a party to make conclusory allegations and then, through the discovery process, gain more specific information and amend his pleadings to satisfy the particularity requirement.").

As explained in JCI's Motion to Dismiss, the FAP falls well short of the pleading requirements of Rule 9(b). Although JCI does not rehash its argument in full here, Plaintiffs fail to plead even basic details such as where the presentation was delivered, how the presentation was delivered, what JCI's representatives (as opposed to JJS Leasing's representatives) allegedly did or said with respect to the presentation—all facts Plaintiffs are obligated to allege without the benefit of discovery. Plaintiffs do not identify any false statements of material fact in the presentation. Moreover, Plaintiffs admit that JCI did not send Plaintiff the whitepaper and fail to plead any factual support for its speculative assertion that JCI prepared the whitepaper for Fundient. Allowing Plaintiffs to nonetheless seek jurisdictional discovery would be antithetical to Rule 9(b).

**B. <u>Plaintiffs Fail to Make a Preliminary Showing of Jurisdiction</u>**

In the alternative, Plaintiffs motion should be denied because Plaintiffs fail to make a preliminary showing of jurisdiction over JCI. A party seeking jurisdictional discovery must first make a "preliminary showing of jurisdiction" by presenting "factual allegations that suggest with

reasonable particularity the possible existence of the requisite contacts." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). Moreover, "[t]o merit jurisdictional discovery, [the plaintiff] must show that it is likely to produce the facts needed to withstand dismissal." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) (cleaned up). The court may deny jurisdictional discovery "where the plaintiff only offers speculation as to jurisdiction and where the plaintiff is waging a 'fishing expedition' into jurisdictional facts." *Xenex Disinfection Services LLC v. Deal*, SA-16-CV-232-XR, 2016 WL 3033779, at *2 (W.D. Tex. May 25, 2016). Plaintiffs fail to meet this burden.

As an initial matter, in a puzzling attempt to demonstrate that JCI knew Plaintiffs were based in Texas, Plaintiffs submit a September 22, 2020 email from Sal Mirran, sent *after the presentation*, which includes a Texas address in the subject line. *See* Pls.' Mot. Ex. 9. In any event, Plaintiffs' allegations concerning the presentation and whitepaper fail to make a preliminary showing of jurisdiction, regardless of whether JCI knew Plaintiffs were based in Texas.

*First*, Plaintiffs' vague allegation that representatives of JCI and JJS Leasing in some unspecified manner "delivered" the presentation to Plaintiffs fails to suggest with "reasonable particularity" the possible existence of requisite contacts between JCI and Texas. Plaintiffs do not explain in what sense representatives of JCI (as opposed to representatives of JJS Leasing) "delivered" the presentation, a particularly glaring omission given the presentation's alleged title: "*JJS Leasing, LLC*: Point-of-Sale Consumer Finance Opportunity Investment Overview." FAP ¶ 10 (emphasis added). Nor do Plaintiffs allege any statements by JCI's representatives at the presentation. Instead, Plaintiffs appear to quote from a slideshow, without identifying who provided the slideshow or who presented any of the slides. All of the foregoing information is

plainly within Plaintiffs knowledge—particularly Sal Mirran, an alleged recipient of the presentation, *see* FAP ¶ 10—making Plaintiffs vague allegations that lump together representatives of JCI and JJS Leasing all the more problematic. Simply put, by hiding the ball with vague allegations, Plaintiffs fail to make a preliminary showing of jurisdiction warranting discovery.

Plaintiffs' proposed discovery concerning the presentation only underscores the problem. Plaintiffs seek discovery regarding JCI's alleged preparation for the presentation, much of which is irrelevant to jurisdiction, and none of which addresses the fundamental issue: Plaintiffs vague allegations as to the presentation itself.

*Second*, as Plaintiffs admit, Zimmer—not JCI—sent Plaintiffs the whitepaper. Citing *Educare Ctr. Services, Inc.*, 414 F. Supp. 3d 960 (W.D. Tex. 2019), Plaintiffs nonetheless assert that the Court may exercise jurisdiction over JCI on the theory that JCI "directed the delivery of fraudulent communications by" Zimmer. *See* Pls.' Mot. at 6. Plaintiffs' reliance on *Educare* is misplaced.

In *Educare*, the court found personal jurisdiction over the co-owner and president of a telemarketing company who, despite not making telemarking calls into the jurisdiction himself, allegedly designed and implemented a telemarking scheme purposefully targeting the jurisdiction and directed the company's deceptive calls into the jurisdiction. *See Educare*, 414 F. Supp. 3d at 970. Plaintiffs do not offer a single factual allegation suggesting that JCI controlled Zimmer or directed Zimmer to send the whitepaper to Plaintiffs. To the contrary, the very premise of Plaintiff's fraud claim is that Zimmer sent Plaintiffs the whitepaper to induce them to invest in JJS Leasing*, a company co-owned by Zimmer* (not JCI).

Moreover, Plaintiffs fail to show that discovery regarding the whitepaper is likely to provide facts sufficient to demonstrate jurisdiction. Plaintiffs seek documents and communications (1) "related to the decision to send the Whitepaper to Plaintiffs," and (2) "showing how Scott Zimmer obtained the Whitepaper, when he obtained it, and why it was sent to him." In support, however, Plaintiffs offer nothing more than speculation that such documents "will confirm that JCI sent the fraudulent whitepaper to Zimmer with the intent that he deliver it to Plaintiffs." Plaintiffs' Motion for Jurisdictional Discovery ("Pl.'s Mot.") at 7. Plaintiffs do not allege any facts suggesting that JCI was involved in *Zimmer's decision* to send the whitepaper to Plaintiffs. Likewise, Zimmer's possession of the whitepaper is hardly notable given the involvement of JJS Leasing and its members in the AIO program. Indeed, Plaintiffs themselves allege that QHM—one of Zimmer's fellow members at JJS Leasing—helped prepare the whitepaper, and that the whitepaper bore the logo of QHM's George Brazil brand. FAP ¶ 17. Plaintiffs' requests amount to a fishing expedition, which the Court need not, and should not, permit.

### C. <u>Plaintiffs Failed to Diligently Pursue Jurisdictional Discovery</u>

Plaintiffs' motion should be denied for the additional reason that Plaintiffs failed to diligently pursue their previous opportunity to conduct jurisdictional discovery. JCI filed a special appearance contesting personal jurisdiction on December 8, 2021. *See* ECF No. 1-9. At Plaintiffs' request, JCI and its then-codefendants postponed setting a hearing on their special appearances so Plaintiffs could conduct jurisdictional discovery. *See* Ex. 1. However, Plaintiffs chose only to serve jurisdictional discovery on two of the defendants: QHM Holdings, LLC (George Brazil) and Jim Probst. *See* Exs. 2, 3.

JCI ultimately postponed setting a hearing on its special appearance for over two months, affording Plaintiffs ample time to conduct jurisdictional discovery. Plaintiffs nonetheless failed to serve a single discovery request on JCI until February 23, 2022, when—without warning, and despite the still-pending special appearances—Plaintiffs attempted to serve extensive merits discovery. *See* Exs. 4, 5. Astonishingly, Plaintiffs attempt to blame JCI for their own failure to serve jurisdictional discovery, asserting that JCI's special appearance did not adequately "disclose the basis for its belief that Texas lacks personal jurisdiction." Pl.'s Mot. at 2. But even if Plaintiffs did not know every detail of JCI's argument, that does not excuse them from failing to pursue any jurisdictional discovery whatsoever.

Plaintiffs wholly failed to take advantage of their opportunity to conduct jurisdictional discovery, and they should not be permitted another opportunity to conduct jurisdictional discovery now. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 857 (5th Cir. 2000) (emphasizing fact that plaintiffs failed to diligently pursue discovery in upholding denial of additional jurisdictional discovery).

## CONCLUSION

For the foregoing reasons, JCI respectfully requests that Plaintiffs' Motion for Jurisdictional Discovery be denied.

Respectfully submitted,

Dated: May 3, 2022

*/s/ Sean M. Roberts*

Sean M. Roberts, *pro hac vice*
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue NW, Suite 740
Washington, D.C. 20004
Tel: (202) 737-3500
Fax: (202) 735-5071
sroberts@aegislawgroup.com

Robert A. McNiel
CALHOUN, BHELLA & SECHREST, LLP
Texas Bar No. 24043814
rmcniel@cbsattorneys.com
325 N. Saint Paul Street, Suite 2300
Dallas, Texas 75201
(214) 981-9200 (t)
(214) 981-9203 (f)

*Attorneys for Defendant Johnson Controls, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2022, I electronically filed the foregoing document with the Clerk of the Court using the electronic court filing system, which will provide notification of such filing to all counsel of record.

/s/ Sean M. Roberts
Sean M. Roberts